# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARTUR BASENTSIAN,

Petitioner,

v.

FERETI SEMAIA, ET AL.,

Respondents.

Case No. 5:26-cv-03106-MAR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On June 5, 2026, Petitioner Artur Basentsian ("Petitioner"), an immigration detainee, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his re-detention in immigration custody. Dkt. 1 ("Pet."). On June 12, 2026, Respondents filed an Answer to the Petition. Dkt. 8, ("Answer"). On June 14, 2026, Petitioner filed a Reply. Dkt. 9, ("Reply"). The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.**

## II.

## **FACTUAL BACKGROUND**[1]

Petitioner is an 18 year old national of Armenia who entered the United States through a Port of Entry in January 2024.  Pet. at 5.  Petitioner was released on an Order of Release on Recognizance ("OROR") under 8 U.S.C. § 1226(a).  See Dkt. 8-2 at 1.  Petitioner complied with all reporting requirements.  Pet. at 6.  Petitioner resided with his parents and siblings and maintains substantial ties to the local community.  Id. at 2.  Petitioner was arrested on April 30, 2026 for alleged violations of PC 245(a)(1), Assault with a Deadly Weapon other than a Firearm, and Misdemeanor charge PC 417(a)(1), Brandishing a Weapon other than a Firearm.  Answer at 2.  Petitioner's criminal defense attorney advised that the pending felony charge is expected to be dismissed and the remaining misdemeanor charge is likely to be diverted toward dismissal.  Pet. at 3.

On June 3, 2026, Petitioner was arrested by immigration officers when he appeared at his regularly scheduled ICE appointment.  Id. at 2. Petitioner was detained without any meaningful pre-deprivation process, individualized custody determination, or opportunity to be heard.  Id.  Petitioner is detained at the Adelanto Detention Facility.  Id.

## III.

## **SUMMARY OF PETITIONER'S CLAIMS**

Petitioner's claim for relief is that his detention without notice or an opportunity to contest the revocation of his release violates his procedural due process rights.  Pet. at .

---

1 The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition and the exhibits attached.  Respondents had the opportunity to dispute these facts or provide additional facts but declined to do so unless noted herein.  Dkt. 8.  Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true)

Petitioner seeks immediate release from custody under reasonable conditions of supervision.  Pet. at 14.  Petitioner further seeks an order enjoining Respondents from re-detaining him absent constitutionally adequate process and a meaningful individualized determination supported by evidence.

In their Answer, Respondents argue that Petitioner has not shown that the Government lacked authority to detain him.  Answer at 3.  They further argue that Petitioner's remedy is a Rodriguez bond hearing after six months of detention.  Id. at 4.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates

3

procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed."  Khachatryan v. Blinken,

4

4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## **ANALYSIS**

It is undisputed that Petitioner entered the United States in 2024.  Pet. at 5.  It is further undisputed that Petitioner was briefly detained and then allowed to enter the United States on an OROR under 8 U.S.C. § 1226(a).[2]  Id. at 6.  Thus, the Court concludes that once Petitioner was released from custody on an OROR, he acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the time he spent out of custody building a life for himself in the United States.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14,

---

2 The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was arrested by immigration authorities on June 3, 2026, without prior notice or a pre-deprivation hearing. Pet. at 6. Respondents argue that the revocation of Petitioner's release is justified because a condition of his release was that Petitioner "not violate any local, State, or Federal laws or ordinances," and "[n]ot commit any crimes while on this Order of Release of Recognizance." They argue that Petitioner's arrest "obviously" violated the terms of his release. Answer at 2. However, an arrest without any conviction does not establish that Petitioner "obviously" violated any laws or committed any crimes. Additionally, "the fact Petitioner violated a condition of OREC, without more, does not justify completely stripping him of his due process rights." Awa v. Noem, No. 2:26-CV-00922, 2026 WL 943593, at *2 (W.D. Wash. Apr. 8, 2026). Furthermore, Petitioner has not been provided a hearing and Respondents contend that Petitioner's only remedy is to wait six months for a Rodriguez hearing. Answer at 4. "[T]he risk of an erroneous deprivation [of liberty] is high" without a hearing because neither the government nor Petitioner had an opportunity to determine whether there was any valid basis for his detention. Id. (citing Singh v. Andrews, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (cleaned up)). Therefore, the Court concludes that the risk of erroneous deprivation of Petitioner's liberty interest is significant. Pinchi, 792 F. Supp. 3d at 1035.

The government's interest in detaining Petitioners without notice and a pre-deprivation hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal

6

or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]"  Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)).  "In immigration court, custody hearings are routine . . . ."  Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).  There is no indication that providing proper notice and a pre-deprivation hearing would be fiscally or administratively burdensome on the government.  See Garcia, 2026 WL 194745, at *3.

The Court concludes that Petitioner's detention by immigration authorities on June 3, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Zinermon, 494 U.S. 113, 127 ("Generally, the Due Process Clause 'requires some kind of a hearing before the State deprives a person of liberty or property.'"); Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) ("Indeed, Petitioner contends, and the Court agrees, that in light of Petitioner's subsequent compliance and check-ins, his alleged "technical violations" of reporting requirements do not demonstrate that he is a flight risk….To the extent that Respondents dispute this conclusion, such an argument can be made to a neutral decisionmaker in a pre-deprivation hearing.")

The fact that Petitioner could receive a post-deprivation bond hearing six months after his initial re-detention by immigration authorities does not remedy the violation of Petitioner's procedural due process rights.  See, e.g., Sachin Sachin v. Warden of the Desert View Facility, et al., No. 5:26-cv-00707-MWC-ADS, 2026 WL

855741 (C.D. Cal. Feb. 21, 2026) (C.D. Cal. Feb. 21, 2026) ("a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales, 2026 WL 1026234; Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes the bond hearing provided on March 5, 2026 was insufficient to remedy the violation of Petitioner's due process rights in this case.

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody on his prior OROR. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in

8

this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

The Court notes that it will entertain an application by Petitioner requesting an award of reasonable attorney's fees and costs under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition as follows. Respondents shall immediately release Petitioner **Artur Basentsian (A# 244 338 366)** from custody on his prior OROR. Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. When Petitioner is not yet subject to a final order of removal, Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of this Order**.

IT IS SO ORDERED.

DATED:  June 26, 2026

_____
HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

10